UNITED STATES of America

v.

William C. BRENNAN, Petitioner.

No. 87–CV–4296 (JBW).

United States District Court,
E.D. New York.

May 13, 1988.

Andrew J. Maloney, U.S. Atty. by John Gleeson, Beryl A. Howell, Asst. U.S. Attys., U.S. Dept. of Justice, Brooklyn, N.Y., for the U.S.

Harold Borg, Kew Gardens, N.Y., for petitioner William C. Brennan.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge:

Petitioner was convicted in December of 1985 on all 26 counts of an indictment arising out of his solicitation and acceptance of bribes to fix state criminal cases. *United States v. Brennan*, 629 F.Supp. 283 (E.D.N.Y.), aff'd, 798 F.2d 581 (2d Cir. 1986). He now seeks relief on the ground that *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), requires that the nine wire fraud counts of which he was convicted be vacated. 28 U.S.C. § 2255. As to this contention the government concedes that he is correct.

He also seeks to have vacated the Racketeer Influenced and Corrupt Organizations ("RICO") charges, for which the wire fraud counts served as predicate acts. The remaining counts should be dismissed, he contends, on various other grounds. For the reasons stated below he is entitled to none of this additional relief.

### I. *Facts*

The overwhelming evidence supporting Brennan's conviction is described in the opinion of this court and the Court of Appeals referred to above. A jury found him guilty of soliciting and receiving bribes during his tenure as a justice of the New York Supreme Court, Queens County, in connection with cases involving the criminals Messina, Botta, Romano, and Polisi. Count 1 of the 26–count indictment charged participation in a RICO enterprise in violation of 18 U.S.C. § 1962(c), and count 2 charged conspiracy to participate in violation of § 1962(d). Counts 3 through 10 and 17 through 22 charged violation of the Travel Act, 18 U.S.C. § 1952(a), with each count listing a separate instance of travel or use of the telephone in furtherance of the bribery. It is the nine counts—11 through 16 and 23 through 25—which were charged as violations of the mail fraud statute, 18 U.S.C. § 1343, and which must be set aside under *McNally*. These mail fraud counts were based on the same telephone calls which supported the Travel Act counts. Count 26 charged extortion in connection with a case involving Polisi.

Both of the RICO counts were supported by four predicate acts. Racketeering act 1 charged petitioner with bribe receiving in connection with the *Messina* case in 1971. Racketeering act 2 charged him with bribe receiving in the *Botta* case in 1972. Racketeering act 3 contained multiple allegations against the petitioner in connection with the *Romano* case in 1980, alleging bribe receiving and then re-alleging the Travel Act and mail fraud counts which were connected with that instance of bribery (counts 3 through 16). Racketeering act 4 alleged bribe receiving in connection with the *Polisi* case in 1984 and then re-alleged the Travel Act and mail fraud counts which were based on it (Counts 17 through 25).

The jury was instructed that it could find the defendant to have committed a predicate act if it found that he had committed any one of its component acts; that is, they needed to find only that he had committed any one of the bribery, Travel Act, or mail fraud crimes alleged under a racketeering act in order to find him guilty of that predicate act. In the absence of a request by any party, no special questions were asked to determine the jury's basis for its findings on the RICO counts.

Convicted on all 26 counts, Brennan was sentenced to concurrent five-year terms of imprisonment on counts 1, 2 and 26. In addition, he was sentenced to five years concurrent on counts 3–25, to run consecutive to the sentence on counts 1, 2, and 26. The sentence on counts 3–25 was suspended and the defendant placed on probation for five years, one of the conditions being that he not have anything to do with law enforcement or the practice of law, or hold any office of public trust. The defendant was also ordered, in accordance with the RICO statute, to forfeit the full $14,000 he had received in bribes, to pay a fine of $209,000, the maximum allowed by statute, and to pay the mandatory special assessment of $1,300. Petitioner was released from custody in May of 1988 after serving 26 months in prison. For the next five years his activities will be strictly controlled by probation officers under the

terms of his parole and the original terms of his probation.

## II. *The Wire Fraud Counts*

■ The wire fraud counts must be dismissed in accordance with *McNally.* In that case, it was held that the mail fraud statute, 18 U.S.C. § 1341, is limited in scope to the protection of property rights, and cannot be interpreted to prohibit schemes to defraud citizens of their right to the honest and impartial service of state government officials. That holding applies to the wire fraud statute, 18 U.S.C. § 1343, as well. The two statutes are conceptually equivalent and nearly identically worded. They differ only in the instrumentalities used to defraud. *Carpenter v. United States,* —— U.S. ——, 108 S.Ct. 316, 320 n. 6, 98 L.Ed.2d 275 (1987).

The jury which convicted Brennan was charged on the wire fraud counts as follows:

> The indictment alleges that *the defendant ... devised a scheme* and artifice *to defraud the people* of Queens County and the State of New York, whom he served, *of their right to his faithful services.* It is not necessary for the Government to prove that a public servant devised a scheme or artifice to defraud others of anything of identifiable economic value. An intangible or abstract right, such as the right to honest and faithful services can be the subject of a fraud.

(emphasis supplied). While correct under ruling case law when given, this interpretation of the statute is incorrect under the subsequent *McNally* decision. The government does not contest this conclusion. It also conceded, following *Ingber v. Enzor,* 841 F.2d 450 (2d Cir.1988), that *McNally* should be applied to vacate improper wire fraud counts on a petition for collateral review even if the issue of interpretation was not raised on appeal. Counts 11 through 16 and 23 through 25, under which petitioner was improperly convicted of wire fraud, are vacated.

## III. *The RICO counts*

■ The government does not concede that the two RICO convictions should be set aside. Its view is supported by the record. No rational jury could have found the defendant guilty under RICO based on the invalid wire fraud offenses without also basing its conviction on the valid Travel Act offenses.

The jury found Brennan guilty on all of the substantive counts which were set forth as possible bases for a finding of guilt on racketeering acts 3 or 4. If the jury based a determination of guilt on racketeering act 3 or 4 on the wire fraud offenses, thus necessarily finding that those offenses were committed in connection with the enterprise, it must also have concluded that the Travel Act counts were committed in connection with the enterprise, since exactly the same conduct underlay both types of offenses. The jury could not have concluded that a telephone call which formed the basis for a wire fraud count was made in furtherance of the enterprise, but that the very same phone call was not connected with the enterprise when considered in the context of a Travel Act count for which it also formed the basis.

The leading second circuit case, *United States v. Weisman,* 624 F.2d 1118 (2d Cir. 1980), requires this result. In that case the defendants were charged with conspiracy to commit bankruptcy fraud and securities fraud as well as nine substantive counts of bankruptcy and securities fraud. All of these counts were incorporated in a RICO count as predicate acts. On appeal it was held that even if the conspiracy charges could not validly be charged as RICO predicate acts the RICO conviction should be allowed to stand because the substantive counts which had also been incorporated as predicate acts were adequate to support it. The court stated that "the jury could not have rationally concluded that the conspiracies to commit bankruptcy and securities fraud occurred in the conduct of the Theatre's affairs without also finding that the substantive offenses carried out in the course of the conspiracies also took place in

the conduct of the Theatre's affairs." 624 F.2d at 1124. This reasoning applies *a fortiori* to Brennan, because while in *Weisman* the substantive offenses were related to the conspiracy offenses by virtue of the fact that both were part of the same criminal transaction, in *Brennan* the acts on which the jury could alternatively have based its RICO conviction were not only transactionally related, but were one and the same. *See also United States v. Parness*, 503 F.2d 430, 438 (2d Cir.1974) (where RICO indictment listed three predicate acts, all part of the same criminal transaction, which necessarily would have occurred in a chronological series, jury's consideration of third, contested predicate act would have been harmless, because jury could not logically have found guilt on the third without finding guilt on the first two); *United States v. Anderson*, 809 F.2d 1281, 1284 (7th Cir.1987) (RICO conviction upheld, because even if it were unclear that there was enough evidence to support all twelve predicate acts alleged, it was sufficient that there was enough evidence to support four of them; all twelve were "essentially fungible allegations of ticket fixing," and the jury would have been irrational to find only some to have occurred in the conduct of the enterprise); *United States v. Peacock*, 654 F.2d 339, 348 (5th Cir.1981) (RICO count upheld despite insufficient evidence to support one of the predicate acts, because jury would have been irrational not to find guilt on the ten predicate offenses for which it returned a special verdict requiring forfeiture).

The cases relied upon by the petitioner do not support his position. In *United States v. Brown*, 583 F.2d 659 (3rd Cir. 1979), defendants were convicted on two counts of extortion, three counts of mail fraud, and two RICO counts which had incorporated as predicate acts the five substantive counts on which there had been a conviction. The Court of Appeals vacated two of the mail fraud convictions, and then reversed the RICO convictions on the ground that it was impossible to tell on which of the predicate acts the jury had based its verdict. However in *Weisman*, the Court of Appeals for this circuit distin-

guished *Brown* on precisely the grounds which make it inapplicable to the case at bar. It was pointed out in *Weisman* that "unlike the present case in which the conspiracy counts covered the substantive offenses charged as predicate acts, in *Brown* the substantive offenses charged as predicate acts were distinct and hence it was arguably impossible to determine from the verdict which offenses the jury relied upon in finding a pattern or racketeering." 624 F.2d at 1124–25. The acts underlying the predicate offenses put to the jury in petitioner's trial were related, as in *Weisman*, rather than distinct, as in *Brown*.

*United States v. Holzer*, 840 F.2d 1343 (7th Cir.1988), also relied upon by petitioner, is inapplicable to Brennan's situation on its facts. There the defendant was convicted of mail fraud, extortion, and a RICO violation which was predicated on six offenses alleged in addition to the mail fraud offenses and one of the extortion counts. After vacating the mail fraud counts pursuant to *McNally*, the court vacated the RICO conviction as well on the ground that it was impossible to tell which predicates had served as the basis for that conviction. The court's test for whether the RICO conviction should be reversed was whether the jury could rationally have acquitted absent the mail fraud offenses. In contrast to petitioner's case, the RICO charge against Holzer did not contain two predicate acts, in addition to the wire fraud offenses, of which he had been substantively convicted. There was thus no reason the jury could not have found him guilty based only on the extortion offense (of which he had been substantively convicted) together with one or more of the mail fraud offenses.

■ Petitioner's remaining arguments for vacature of the RICO counts are without merit. He argues that the nomenclature of racketeering is unfairly prejudicial, but the jury was specifically instructed regarding the legal definition of that term. His contention that the New York State Supreme Court is not an "enterprise" within the meaning of the RICO Statute is wrong. *See, e.g., United States v. Angelilli*, 660 F.2d 23, 31 (2d Cir.1981), *cert. de-*

*nied,* 455 U.S. 910, 102 S.Ct. 1258, 71 L.Ed. 2d 449 (1982) (government units such as the New York City Civil Court can constitute an enterprise). He cannot prevail on his argument that the statute of limitations bars the RICO counts in the absence of racketeering acts 3 and 4, the only two which occurred within five years of the filing of the indictment, because, as already demonstrated, those acts must be sustained as valid despite *McNally.* Nor can it be argued at this stage that the RICO convictions must be overturned because we have no way of knowing whether the jury actually based its conviction on one of these two non-time-barred acts. This statute of limitations argument could have been made at trial or on appeal even without respect to *McNally,* but was not; it cannot, therefore, be made on a petition for collateral review. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In any event, the evidence and the positions taken at trial by the defendant indicate that the jury convicted based on racketeering acts 3 and 4.

### IV. *The Travel Act and Extortion Counts*

Petitioner asserts that both the Travel Act and the extortion counts must be vacated on the ground that the improper intangible rights instruction given with regard to the wire fraud counts spilled over onto these other counts and "poisoned" them. This argument is also presented as a retroactive complaint against misjoinder of the invalid wire fraud counts with the other counts.

■ Any conceivable prejudice in the jury's consideration of the Travel Act and extortion counts which could theoretically have resulted from the incorrect wire fraud instruction was dispelled by the court's other instruction to the jury that it consider each count separately. This instruction has been held adequate to overcome a claim of spillover prejudice. *United States v. Teitler,* 802 F.2d 606, 616 (2d Cir.1986).

■ With regard to the misjoinder claim, the Supreme Court held in *United States v. Lane,* 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed. 2d 814 (1986), that misjoinder requires reversal of a conviction "only if the misjoin-der results in actual prejudice because it had 'substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* 106 S.Ct. at 732. That kind of prejudice did not exist at Brennan's trial because all of the evidence admitted in support of the wire fraud counts would have been admissible in support of the valid Travel Act counts. The *Lane* court found that the misjoinder at issue there was harmless since there was "overwhelming evidence of guilt," and the trial court had "admonished the jury to consider each count ... separately." *Id.* at 732. Both of these criteria were satisfied in petitioner's case.

### *Conclusion*

The writ of habeas corpus is granted. 28 U.S.C. § 2255. The convictions under 18 U.S.C. § 1343 are vacated. The United States produced the petitioner for resentencing, where he had the right of allocution. As a result of the *McNally* case, petitioner's fines are reduced by $9,000 to $200,000, and his special assessment by $450 to $850.

All other relief is denied. A certificate of probable cause is granted.

So ordered.